■ In the Matter of JONATHAN KATZ, Appellant, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents. [924 NYS2d 210]—

Kavanagh, J. Appeal from a judgment of the Supreme Court (Platkin, J.), entered April 7, 2010 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Dean of Harpur College of Arts and Sciences finding petitioner guilty of plagiarism.

Petitioner attended respondent Harpur College of Arts and Sciences (hereinafter the College) at respondent Binghamton University in the fall of 2008, and was enrolled in a history course, which required that he prepare a term paper that focused on a major historical event that occurred in Europe be-tween 1900 and 1945. After petitioner submitted a polished draft of a paper entitled "Russian Intentions in Signing the

Non Aggression Pact with Germany," his professor voiced concerns about the integrity of the document and, in particular, expressed skepticism about petitioner's claim that he did not use any secondary sources in his preparation of the paper. After the professor met with petitioner and discussed with him how he had composed the paper, she concluded that parts of it were not his own work and that he was guilty of plagiarism. She told petitioner that if he accepted a failing grade for the paper and admitted to plagiarism, she would not refer the matter to the College's Academic Honesty Committee (hereinafter the Committee). When petitioner refused this offer,[1] the professor submitted a report to the Committee detailing her reasons for believing that petitioner was guilty of plagiarism and asked that it conduct a formal review of the matter. The Committee notified petitioner of the charges in writing and informed him that a hearing would be held at which he had the right to have someone present to advise and assist him. After hearing from both petitioner and the professor, the Committee unanimously concluded that petitioner was guilty of plagiarism and filed a recommendation with the Associate Dean of Academic Affairs that petitioner be suspended from the College for one semester.[2] The Associate Dean reviewed the Committee's report, as well as other materials submitted at the hearing, and concurred with the finding that petitioner was guilty of plagiarism. In her decision, the Associate Dean found that the "blatant nature" of the plagiarism required that petitioner's penalty be altered to a six-month delay in the certification of his college degree.

Petitioner filed an appeal with respondent Dean of Harpur College of Arts and Sciences. During his review of these proceedings, the Dean obtained an independent assessment of petitioner's paper from an expert in the field who concluded, after reviewing the document, that "[c]learly, some of the more felicitous phrases in this paper were lifted from a secondary source," and stated "[i]f [petitioner] is a plagiarist (which I suspect he probably is), he's really not very good at it."[3] The Dean confirmed the finding of plagiarism noting that, while College authorities were unable "to identify additional sources from you which you took material used in your paper, the preponderance of the evidence indicates that other parts of the

1. According to the professor, petitioner ultimately offered to take a failing grade for the paper if she would not initiate plagiarism proceedings.

2. The Committee was composed of an Assistant Dean as chairperson, three faculty members and two members of the student body.

3. Petitioner, in Supreme Court, waived any claim that his due process rights were violated by the Dean's consideration of an expert opinion that was not before the Committee when it rendered its determination.

paper are not your own work," but modified petitioner's penalty to a failing grade in the course. Subsequently, petitioner commenced this CPLR article 78 proceeding challenging the determination that he was guilty of plagiarism. When Supreme Court dismissed his petition, this appeal ensued.

A university's disciplinary determination will be upheld and not be deemed arbitrary and capricious if it is based on a rational interpretation of the relevant evidence and the "university substantially adhered to its own published rules and guidelines" in arriving at the decision (*Matter of Hyman v Cornell Univ.*, 82 AD3d 1309, 1310 [2011] [internal quotation marks and citations omitted]; *see Matter of Warner v Elmira Coll.*, 59 AD3d 909, 910 [2009]; *Matter of Basile v Albany Coll. of Pharm. of Union Univ.*, 279 AD2d 770, 771 [2001], *lv denied* 96 NY2d 708 [2001]). Here, petitioner does not deny that he was provided with notice of the charges and given a hearing during which he was able to present evidence, examine witnesses and make arguments contesting the allegation that portions of his paper had been plagiarized from other sources (*see Matter of Nawaz v State Univ. of N.Y. Univ. at Buffalo School of Dental Medicine*, 295 AD2d 944, 945 [2002]). However, he claims that the College did not comply with its own rules and regulations and denied him due process because he was never "confronted with the source from which he was charged with plagiarizing."

Initially, we note that the College's Student Academic Honesty Code (hereinafter the Code) does not define plagiarism to require that the source of the plagiarism be specifically identified. While the faculty handbook suggests that any plagiarism charge be accompanied by "a comparison of the source document with the plagiarized document," such a submission is not mandated by the College's rules and regulations and, while preferable, is not, in our view, an essential prerequisite for a plagiarism finding to be rationally based. In that regard, the Code characterizes plagiarism as a form of academic dishonesty involving the "misappropriation of academic or intellectual credit to oneself" and is committed when one presents the "work of another person as one's own." Conduct it classifies as plagiarism includes: the "quoting, paraphrasing or summarizing without acknowledgment, even a few phrases"; "failing to acknowledge the source of either a major idea or ordering a principle central to one's own paper"; "relying on another person's data, evidence or critical method without credit or permission"; "submitting another person's work as one's own"; or "using unacknowledged resource sources gathered by some-

one else." A finding that plagiarism has been committed using such a description can be based entirely on the content of the work and the circumstances under which the work has been prepared.

Here, compelling circumstantial evidence exists, based on the paper's content and the timing of its preparation, that provided a rational basis for the conclusion reached by the Committee and affirmed during the administrative process that petitioner used secondary sources in the paper, which he failed to identify. In that regard, petitioner, according to his professor, was totally "unprepared" to discuss the paper, and had not even settled on a topic less than three weeks before it was due. Moreover, the draft in question was submitted by petitioner only 10 days after he had selected a topic and had begun the laborious process of analyzing the historical data upon which the paper would be based. As noted by the Dean in his decision confirming the finding of plagiarism, it was "highly unlikely that [petitioner] could have read and analyzed the documents contained in the two collections cited in [petitioner's] paper, digested them, and integrated them into a paper that included polished passages in such a short time. It would be a difficult task for a seasoned history graduate student to accomplish, and it is highly improbable that [petitioner] accomplished this on [his] own." In addition, the draft did not include a bibliography, made no reference to any secondary sources, and failed to contain proper page numbers for its citations and, yet, it set forth a detailed analysis of primary sources generated by these historical events that petitioner claimed as his own. Also, the professor, in addition to questioning the uneven quality of the vocabulary and syntax in the draft, noted that "the level of research [petitioner] ostensibly conducted in complicated and copious primary documents is implausible in this amount of time. It is my professional opinion that he could not have . . . read, assimilated, and placed in a semi-coherent account this vast body of documents in this short amount of time; moreover, this work could not have been accomplished without the use of secondary sources. His ability to link a very disparate body of documents, when he does so successfully, suggests the analytical ability of a professional historian."

The belief that petitioner was guilty of plagiarism was reinforced by his apparent inability to intelligently discuss many of the issues generated by these historical events, even though he had just completed the paper and finished his research. In addition, at the hearing, as noted by members of the Committee, petitioner was not able "to define key terms/concepts he

used in his draft." Moreover, petitioner's own expert, after examining the paper, stated that she could "appreciate how a suspicion of plagiarism could arise" and made pointed reference, as did other educators who examined this draft, to petitioner's ability to arrive at conclusions in the paper regarding "causality with no explicit scholarly support."

Based on our review of this record, we conclude that petitioner was provided with due process and the determination by respondents that he had in fact plagiarized this paper was supported by a rational basis (see Matter of Rensselaer Socy. of Engrs. v Rensselaer Polytechnic Inst., 260 AD2d 992, 993 [1999]). As a result, the judgment dismissing this petition should be, in all respects, affirmed.

Mercure, J.P., Spain, Stein and Garry, JJ., concur. Ordered that the judgment is affirmed, without costs.